L. P. LARSON REAL PROPERTY COMPANY, APPELLANT, V. FIRST TRUST COMPANY OF LINCOLN, TRUSTEE, ET AL., APPELLEES.

273 N. W. 500

FILED MAY 26, 1937. No. 29962.

*Robins & Yost,* for appellant.

*John Jacobson* and *Hall, Cline & Williams, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and BLACKLEDGE, District Judge.

BLACKLEDGE, District Judge.

This is an appeal from the district court for Dodge county and these facts are material to an understanding of the situation upon which the case must be determined.

The plaintiff here designated a company is really L. P. Larson who owns it and uses this style as a convenience in conducting his business. The First Trust Company of Lincoln is successor in interest to the Lincoln Trust Company which had become owner by purchase from Herman Diers, mortgagee, of the mortgage which is the subject of consideration. The mortgage was originally executed in the sum of $21,000, upon which $6,000 had been paid, and at the time of the transactions here under consideration the principal debt stood at $15,000. All the negotiations respecting the final settlement and the conveyance here

under attack, were had between the plaintiff Larson and Mr. Robins, his attorney, on one side, and the First Trust Company, on the other.

There are some facts, however, respecting the transactions prior to the beginning of these negotiations which should be understood. The mortgage in question covered a tract of farm land of approximately 289 acres, and in addition there were certain lots numbered 11 to 16, inclusive, in block 5, in the village of Crowell, which were used as part of the farm property and upon which were situated most, if not all, of the farm buildings. It is in reference to these lots that the controversy in this case arises. There is conflict of testimony as to whether it was originally intended in the execution of the mortgage to include the lots in it. In drafting the mortgage the description of the lots had been inserted both in the description which follows the granting clause and in the habendum clause farther on in the instrument. In the original mortgage said description following the granting clause had been striken through with pen and ink marks both vertically and horizontally through the clause, but leaving it so that it could easily be read. In the recording of the mortgage that part so stricken was not recorded. At the trial Mr. Larson testified that it had not been the intention to include the lots in the mortgage. Mr. Diers, mortgagee, denied this and said that the mortgage was not deleted with his knowledge or consent. The trial court found, however, that Mr. Diers recorded the mortgage in the same condition that it is today; that is, with the description of the lots marked out in one place and left in the other.

In this situation negotiations between plaintiff and defendant respecting a final adjustment of the obligation, which Mr. Larson found himself unable to pay, began in December, 1932, when defendant wrote Mr. Larson calling his attention to the then maturity date of the loan which was March 1, 1933, and inquiring as to payment. To this Mr. Larson replied by letter about a month later and made a trip to Lincoln where there were some negotiations with

the defendant. Thereafter all negotiations on the part of the plaintiff were carried on by his attorney, Mr. Robins. There were various propositions for settlement, including the making of a deed, which continued intermittently until January, 1934. The plaintiff by Mr. Robins continued to insist that the lots were not included in the mortgage and the defendant company replying rather diplomatically, we believe, not directly stating that the lots were included in the mortgage, but insisting upon dealing on that basis, and stating that no property had been released from the mortgage, that they had taken the description in the documents that appear in the course of settlement negotiations from the abstract itself and that they only expected a deed to the property covered by the mortgage, and insisting on settlement according to its terms or that foreclosure would be instituted, and finally, in March, 1934, that it would not consent that the Larson company reserve the lots. At about this time Mr. Larson went personally and examined the record of the mortgage. He says he started reading it from the bottom up and coming to the place wherein the description of the lots was inserted looked no further, but closed the book and left the office, going to that of Mr. Robins whom he told what he had discovered in the records. Mr. Robins, accepting the report of Mr. Larson, then communicated with the defendant offering to include the lots in the deed. April 19, 1934, the trust company wrote to Mr. Robins inclosing a statement of the amount due, a deed and an option to repurchase. April 23 Mr. Robins sent the deed to the defendant. The original papers were not returned until July 17, 1934, when they were returned to Mr. Robins, who at once wrote the defendant calling attention to the condition of the mortgage in having the description of the lots striken therefrom and referring, however, to the additional description later on in the mortgage. This was the first time that Mr. Larson and his attorney had definite conclusive information as to the actual condition of the mortgage. There were among the documents to be executed a repurchase option agreement to be exe-

cuted by the company and an instrument designated as an estoppel affidavit having reference to the completion of the transaction, delivery of possession, etc., to be executed by Mr. Larson.

This was the crucial point so far as concerns the plaintiff's acts in the transaction of his business. He then knew as fully as he could know the facts and conditions respecting the mortgage and the deed in reference to the matter of including the lots in question, and it was clearly incumbent upon him to either complete the transactions as they were then proceeding or to elect to rescind the same and restore the parties to their former position. Instead of taking this last-mentioned course, Mr. Robins in his letter of July 18 called attention that the repurchase option agreement had not been sent and stated that when it was sent the Larson company would make the affidavit required. July 20, 1934, the defendant wrote to Mr. Robins sending the option agreement and asking that the estoppel affidavit be forwarded, which was done July 30, 1934. The matters stood in this situation until May 13, 1935, when the instant case was commenced asking for a reformation of the deed and the return to the plaintiff of the five lots in dispute.

Consideration of these facts which are disclosed by the record to be without dispute can lead but to one conclusion, which is, that however good a case plaintiff had up to July 17, 1934, when upon receipt of the original mortgage and the release thereof and being in full possession of all the facts, concerning which the defendant owed him no further duty, he elected to retain the documents, receive the repurchase option agreement and execute the estoppel affidavit, all of which was done, and he rested upon that conclusion of the negotiations until in May, 1935, he thereby became finally concluded as to the whole matter and as to the prosecution of this action.

The judgment and decree of the district court was right and it is

AFFIRMED.